12928

LITTLE ET AL. v. SOUTHERN COTTON OIL CO.

(153 S. E., 462)

*Messrs. Thomas & Lumpkin,* for appellant,

*Messrs. W. F. Stevenson* and *John D. Nock,* for respondent,

May 22, 1930.

The opinion of the Court was delivered by Mr. Justice Blease.

This action was commenced in the Court of Common Pleas for Chesterfield County in 1917, the plaintiffs seeking to recover of the defendant the sum of $1,000.00, the value of certain cotton seed, alleged to have been converted by the defendant. Plaintiffs claimed that the cotton seed was incumbered by a duly recorded crop mortgage in their favor, executed by one H. E. Braswell in 1912, and that the indebtedness, the payment of which had been secured by the mortgage, had not been satisfied at the time of the institution of the suit.

The defendant first filed a general denial. Later, by successive amendments, the defendant alleged that the defend-

ant corporation was a subsidiary company of· the Virginia-Carolina Chemical Company, another corporation, all of the stock of the defendant being owned by the last-mentioned corporation; that in 1924, both the Virginia-Carolina Chemical Company and the defendant were placed in the hands of receivers by the orders of the United States District Courts for the Eastern District of South Carolina and the Western District of North Carolina, these proceedings being ancillary to prior orders appointing receivers for the said corporations in the United States District Court for the District of New Jersey; that by orders of the District Courts of the United States for the Eastern District of South Carolina and the Western District of North Carolina, made in the receivership proceedings, all creditors were required to file their claims within a specified time with the persons designated, or else suffer their claims to be barred; that the capital stock of the defendant corporation, with the approval of the proper Court, was sold by the receivers of the Virginia-Carolina Chemical Company; that the sale was confirmed by the New Jersey Court, and also by the United States District Courts for the Eastern District of South Carolina and that Court of the Western District of North Carolina; and later, in 1925, the receivers were duly discharged. Defendant claimed further that the demand of the plaintiffs, if any they had, had been transferred to the funds representing the purchase price of the stock of the defendant corporation, and consequently the plaintiffs are barred from any claim or demand against the defendant.

· Although the action was one at law, both the parties waived jury trial, and consented to an order referring the case to the Master to take the testimony and report the same to the Court. Upon the filing of the Master's report, the cause was heard before Hon. E. C. Dennis, Circuit Judge, at chambers, on September 21, 1929, who rendered a verdict, and ordered judgment in favor of the plaintiffs for the sum of $1,000. Judge Dennis specifically held: (1) That the preponder-

ance of the evidence showed the allegations of plaintiffs' complaint were true, and that the defendant was liable for the cotton seed converted; and (2) that the decrees of the Federal Court did not bar the suit of the plaintiffs.

From the order of the Circuit Judge, the defendant has appealed to this Court. The six exceptions interposed raise the three questions stated hereinafter, which we pass upon.

In determining the appeal, we must be guided by the rule of law that, in this action at law, we are bound by the findings of fact of the Circuit Judge, if there was any evidence at all upon which those findings were based.

The first question is this: Was there any evidence from which delivery of the seed to the defendant could be reasonably inferred? There was sufficient evidence, although it was not particularly strong, to sustain the finding of the Circuit Judge against the defendant in this regard. Braswell, the mortgagor, was also the agent of the defendant for the purpose of buying cotton seed. He admitted to one of the plaintiffs that he sold to his principal the seed covered by the plaintiff's mortgage. There was also evidence that Braswell's cotton, on which plaintiffs held a mortgage, was ginned at Braswell's gin, the seed commingled and hauled away with other seed of Braswell, sold and shipped to the defendant, and that Braswell received checks from the defendant in payment of the seed.

The second question is this: Is the defendant relieved because Braswell, its agent, was acting against the principal's interest? Even if Braswell was attempting to defraud, and did defraud, his principal, while defrauding plaintiffs, the defendant is still liable for the value of the seed, unless perhaps, it could be shown that Braswell and the plaintiffs were acting in concert. There seems to be no evidence of any collusion between the plaintiffs and Braswell. The general rule is that when an agent is engaged in a transaction in which he is interested adversely to his principal, the

principal will not be charged with knowledge of the agent acquired therein. 21 R. C. L., 843; *Wardlaw v. Troy Oil Mill,* 74 S. C., 368, 54 S. E., 658, 114 Am. St. Rep., 1004; *Knobelock v. Bank,* 50 S. C., 259, 27 S. E., 962; *Akers v. Rowan,* 33 S. C., 451, 12 S. E., 165, 10 L. R. A., 705. We do not know of any decision in our reports, however, which would permit the defendant to escape liability for goods received by it on account of the fraudulent act of its agent, unless as indicated, collusion between the agent and the third party could be established. The recorded mortgage of Braswell to the plaintiffs was constructive notice to the defendant of the plaintiffs' lien on the cotton seed.

The third question is as follows: Are the plaintiffs barred by the injunction issued in 1924 in the Federal Courts, and by their failure to file claim with the receivers?

It is to be remembered that the injunctions staying the proceedings were issued some seven years after the plaintiffs commenced this action in the State Court.

Section 265 of the Judicial Code (U. S. Code, title 28, § 379, 28 U. S. C. A. § 379, Section 1242 U. S. Compiled Statutes), which, it seems, has been in force since about 1793 is as follows:

"The writ of injunction shall not be granted by any Court of the United States to stay proceedings in any Court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

The recent case of *Riehle, Receiver, v. Margolies,* 279 U. S., 218, 49 S. Ct., 310, 312, 73 L. Ed., 669, construing the quoted section, is, we think, conclusive of the question under consideration, and sustains the legal position taken by the Circuit Judge.

In that case, in many respects very close to the case at bar, Mr. Justice Brandeis, speaking for a unanimous Court, said this:

"The appointment of a receiver of a debtor's property by a Federal Court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. It may do this either in the original suit, * * * or by ancillary proceedings. * * * And it may, despite Section 265 of the Judicial Code (28 USCA, § 379), issue under Section 262 (28 USCA, § 377), or otherwise, all writs necessary to protect from interference all property in its possession. * * * But the appointment of the receiver does not necessarily draw to the Federal Court the exclusive right to determine all questions or rights of action affecting the debtor's estate. * * * This is true, *a fortiori,* as to the subject-matter of a suit pending in a State Court when the receivership suit was begun. * * * The rule that, when the jurisdiction of a Court, and the right of a plaintiff to prosecute his suit in it have once attached the right cannot be restrained by proceedings in any other Court, applies to protect the jurisdiction of the Court unless the case is within some recognized exception to Section 265 of the Judicial Code. * * * Here there is no basis for any such exception.

"The contention that the judgment is not conclusive rests upon the argument that, because the appointment of the receiver draws to the appointing Court control of the assets and in the distribution of them among creditors there is necessarily involved a determination, both of the existence of the claim and of the amount of the indebtedness, the Federal Court must have the exclusive power to make that determination. The argument ignores the fact that an order which results in the distribution of assets among creditors has ordinarily a twofold aspect. In so far as it directs distribution, and fixes the time and manner of distribution, it deals directly with the property. In so far as it determines, or recognizes a prior determination of, the existence and amount of the indebtedness of the defendant to the several

creditors seeking to participate, it does not deal directly with any of the property. The latter function, which is spoken of as the liquidation of a claim, is strictly a proceeding *in personam*. Of course, no one can obtain any part of the assets, or enforce a right to specific property in the possession of a receiver, except upon application to the Court which appointed him."

In the United States Code Annotated (West Publishing Company), beginning at page 194 of title 28 (Section 379), notes of many decisions in support of the holdings of the *Riehle case* will be found.

Clearly, the plaintiffs in this action, having instituted their action in one of the Courts of this State with proper jurisdiction thereof, had the right to continue the same in that Court, for, under the principles announced in the *Riehle case* the Federal Courts did not have power to enjoin the continuance and final adjudication of that action. The injunctions issued had no effect upon plaintiffs' suit. The plaintiffs have at no time sought to proceed against any of the assets of the defendant corporation, in the control of the receivers of that corporation. The plaintiffs simply sought, and have at last obtained, a judgment against the corporation itself for the amount of its demand, as they had the right to do. All the capital stock of the defendant corporation, which was owned by the Virginia-Carolina Chemical Company, was sold to other parties. These parties became the stockholders thereof by the transfer. The plaintiffs have not sued the stockholders or the former receivers. They have just continued their suit against the corporation, which is still in existence.

The judgment of this Court is that the judgment below be affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting): There is sufficient evidence in the case, although much of it should have been

excluded as hearsay, to have warranted the submission of the issue of fact to a jury, as to the delivery of the cotton seed by Braswell to the defendant company. The submission of that issue to the Judge, in a law case, as this was, and his finding thereon, have the same effect as a verdict of a jury and cannot be reviewed by this Court.

The question, however, which has given me great concern, is whether under the circumstances the plaintiffs should be allowed to enforce the judgment which they have obtained in the State Court, against the defendant corporation, after the Federal Court had assumed jurisdiction of the corporation by the appointment of receivers, after the assets of the estate had been assembled, converted into cash, and distributed among the creditors, and after the receivers had been discharged; the plaintiffs during the administration of the receivers not having filed a claim against the estate.

It appears that the action of the plaintiffs upon the cause of action stated in the complaint, the conversion of certain cotton seed upon which they had a lien, was commenced *in 1917,* while the defendant was a going concern; the action for some reason or other lay dormant until the early part of 1926, *nine years thereafter,* at which time the case was docketed for trial and referred to the Master to take the testimony. The testimony was taken and reported to the Court in July, 1929. In September, 1929, the case was heard by his Honor, Judge Dennis, who filed a decree rendering judgment against the defendant in the sum of $1,000.00. From that decree the defendant has appealed.

In the meantime, that is, between the date of the commencement of the plaintiffs' action in 1917, and the docketing of the case for trial in February, 1926, that is to say, in March, 1924, the Virginia-Carolina Chemical Co., which owned the entire capital stock of the defendant herein, Southern Cotton Oil Company, became insolvent and was placed by the Courts in the hands of receivers, who were by separate

proceedings appointed receivers also of the Southern Cotton Oil Company.

In the administration of the affairs of the Virginia-Carolina Chemical Company, the Federal Courts directed the receivers of that company to sell the stock which it held in the Southern Cotton Oil Company, which they did, the same being sold and transferred to two parties, Hecht and Groghegan, who complied with the terms of sale and received the stock. Thereupon the Federal Courts by order, duly confirmed the sale.

Apparently the purchasers of the stock of the Southern Cotton Oil Company did not deem it necessary to organize a new corporation, as manifestly such necessity did not exist as the corporation, as a legal entity had not been dissolved and they owned all of the stock.

In the administration of the estate of the Southern Cotton Oil Company, then in the hands of the receivers, on June 26, 1924, an order was passed in the United States Court for the Eastern District of South Carolina, appointing a special master to ascertain and report the claims against the Southern Cotton Oil Company, and providing:

"5. All creditors who elect to present and prove their claims in this jurisdiction, shall present them to the said Charles W. Waring as Special Master at his office No. 35 Broad Street, Charleston, S. C., by filing written statements or proofs of their several claims and demands against the said Corporation within Ninety (90) days from the date of this order.

"6. No such creditor of the said corporation who fails to file such written statement or proof of his claim as aforesaid, either in this jurisdiction within Ninety (90) days from the date of this order, or in the domiciliary jurisdiction, within the time fixed under the provisions of any order taken therein, shall be permitted to share in any dividend which may be made and declared by this Court out of the estate or assets of the said corporation within this jurisdiction, or

shall be permitted to assert any claim whatsoever against the estate or assets of the said corporation in the possession of the said receiver within this jurisdiction.

The order provided for the call for creditors to be advertised, which appears to have been complied with on July 5, 12, 19, 1924.

The plaintiffs filed no claim in compliance with this order.

On May 16, 1925, the Federal Court passed an order directing that all of the assets of the Southern Cotton Oil Company, represented by the stock so sold, be restored and delivered to that company upon its compliance with certain named conditions, which appear to have been done—at least there is nothing appearing to the contrary—and discharging the receivers upon compliance, without further order.

If it can be demonstrated, as I think it can be, that the plaintiffs are not entitled to enforce their judgment against the defendant corporation, it would be an empty formality to sustain what appears upon its face to be a judgment enforceable by the issuance of an exception to be levied upon the property of the defendant.

I do not question, of course, the principle announced in the case of *Riehle v. Margolies,* 279 U. S., 218, 49 S. Ct., 310, 73 L. Ed., 669; but the question now at issue was not presented or decided in that case. There the claimant prior to receivership had commenced his action in the State Court, and *pending receivership* prosecuted it to judgment; he maintained that *in the distribution of the assets of the estate, in the hands of the receiver,* his judgment in the State Court must be accepted as *res adjudicata.* The Court sustained his contention, upon the ground that the Federal Court could not enjoin the State Court from proceeding to judgment in the action, which was one *in personam;* and that the plaintiff had a right to present his claim to the receiver as an adjudicated claim against the estate, the validity of which could no longer be open to inquiry. It is clear that the plaintiff in that case had done exactly

what he should have done and was entitled to participate in the distribution which had not up to that time been made.

The distinction between that case and the one at bar is manifest; if the plaintiffs in the case at bar had prosecuted their claim to judgment pending the receivership, and had filed the judgment with the receivers, they would have been entitled, as Margolies was, to have their claim treated as an adjudicated claim and to share in the distribution of the assets of the estate without further proof. They, however, did not do so; they delayed prosecuting their action to judgment *for nine years* after it had been commenced, and for two years after the receivership had been completed, all of the assets distributed and the receivers discharged.

While unquestionably the plaintiffs had the right to prosecute their action in the State Court to judgment, that right was simply to have its validity judicially established for presentation to the receivers. The Federal Court had assumed jurisdiction of the insolvent corporation through its receivers, and whatever relief the plaintiffs were entitled to had to be sought in that proceeding whether upon a simple claim or upon a claim that had been judicially ascertained in the State Court which had jurisdiction of that matter.

As the Court said in the *Riehle case:*

"Of course, no one can obtain any part of the assets, or enforce a right to specific property in the possession of a receiver, *except upon application to the Court which appointed him.* * * * There is no inherent reason why the adjudication of the liability of the debtor *in personam* may not be had in some Court other than that which has control of the *res*. It is only necessary that in the receivership proof of the claim be made in an orderly way, *so that it may be established who the creditors are and the amounts due them.*"

It seems clear to me that the Federal Court, having appointed a receiver, was charged with the duty of assembling the assets of the estate, calling in the creditors, converting the assets into cash, and making distribution. The only inter-

est which it had in reference to the pending State suit was that the State Court should proceed in an orderly way to determine the validity of the claim, which the plaintiffs had the right to have done but neglected.

If pending the receivership, the plaintiffs found that they could not reach a determination of their claim in the State Court, it was their duty, either to file their claim with the receiver, or to notify the Court of the pending State suit and of their insistence upon prosecuting it to judgment; they did neither.

It does not seem fair to allow the plaintiffs to remain idle for so many years, and then, after the estate had been fully administered, to fall upon the necks of the purchasers of the stock at a receiver's sale, ordered by the Court, who have acted in all good faith and are entitled to the Court's protection.

The entire capital stock of the Southern Cotton Oil Company was an asset of the Virginia-Carolina Chemical Company and was ordered sold as its property. The Court owes it to the purchasers whose purchase was made under its order and confirmed to protect their title. I can see no difference between the sale of that stock and the sale of any other property that was in the hands of the receivers; their sale ordered by the Court and confirmed by the Court should pass the title free of all claims against the corporation.

If the plaintiffs should be allowed to realize upon their judgment, it will be done out of the property of the purchasers of the stock at the receiver's sale, *and not out of the assets of the estate,* against which alone they were entitled to have recourse.

I feel satisfied that the defendant would be entitled to an injunction in the Federal Court against the plaintiffs enforcing execution under their judgment.

In *Kline v. Burke Const. Co.,* 260 U. S., 226, 43 S. Ct., 79, 81, 67 L. Ed., 226, 24 A. L. R., 1077, the Court said:

"It is settled that where a Federal Court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a State Court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the Federal Court."

See *Wells Fargo & Co. v. Taylor,* 254 U. S., 175, 41 S. Ct., 93, 65 L. Ed., 205; *Atchinson, T. & S. F. R. Co. v. Wells,* 265 U. S., 101, 44 S. Ct., 469, 68 L. Ed., 928.

In *Wabash R. Co. v. Adelbert College,* 208 U. S., 38, 28 S. Ct., 182, 52 L. Ed., 379, it was held, quoting syllabus:

"The possession of property in the Circuit Court carries with it the exclusive jurisdiction to determine all judicial questions concerning it, and that jurisdiction continues after the property has passed out of its possession by a sale under its decree to the extent of ascertaining the rights of, and extent of liens, asserted by, parties to the suit and which are expressly reserved by the decree and subject to which the purchaser takes title; and any one asserting any of such reserved matters as against the property must pursue his remedy in the Circuit Court and the State Court is without jurisdiction."

In *Julian v. Central Trust Co.,* 193 U. S., 93, 24 S. Ct., 399, 48 L. Ed., 629, it was held, quoting syllabus:

"Where the Federal Court acts in aid of its own jurisdiction and to render its decree effectual it may, notwithstanding Sec. 720, Rev. Stat., restrain all proceedings in a State Court which have the effect of defeating or impairing its jurisdiction."

In the case of *St. Louis & S. F. R. Co. v. Spiller,* 274 U. S., 304, 47 S. Ct., 635, 71 L. Ed., 1060, it was held that in the administration of the property of an isolvent corporation it is the customary practice of a Court of Equity to make an order requiring all persons claiming a right to participate in the property to file their claims by a stated date, and barring claims not so filed from participation in the property being administered, and such orders are necessary,

lawful and effective. To same effect, see *Chicago, R. I. & P. R. Co. v. Lincoln Co.* (C. C. A.), 284 F., 955; *Ex parte Nayler,* 11 Rich. Eq., 259, 78 Am. Dec., 457.

It is difficult to see how else the Court of Equity could proceed in order to wind up the affairs of the receivership estate and protect purchasers who may have acquired property of the corporation upon a sale made under order of the Court which was later confirmed.

It is true that in some instances a claimant who has not complied with such an order may, upon special grounds of equity and showing of diligence, be allowed to come in before distribution of the assets and discharge of the receiver and establish his claim. A striking illustration of this is found in the *Spiller case,* hereinafter referred to. In the case at bar it is difficult to see how the plaintiffs could have been more neglectful of their rights and duty; they are without the faintest shadow of invoking the consideration which a Court of Equity will sometimes extend *"vigilantibus, non dormientibus."*

In *Employers' Corporation v. Astoria Co.* (C. C. A.), 6 F. (2d), 945, 946, it was held that ordinarily a creditor who has not filed his claim with a receiver within the time fixed by order of Court, will be allowed to do so thereafter "unless the result of allowing the claim is to destroy intermediate interests, arising in the faith of creditors' inaction."

The case of *St. Louis, etc., R. Co. v. Spiller,* 274 U. S., 304, 47 S. Ct., 635, 71 L. Ed., 1060, is instructive in that it demonstrates the diligence which a claimant, under such circumstances as surrounded the plaintiffs in the case at bar, should exercise. There (quoting syllabus) "an unsecured creditor of a railroad prosecuted his claim *diligently* in an independent suit before and after the railroad passed into a receivership and was sold to a new company pursuant to a plan of reorganization, during which period his suit was resisted by the railroad, the receivers, and counsel for the new company, successively; and where, having recovered

judgment after the sale, he appeared at the hearing on the order to confirm the sale and gave notice to the old company, the receivers, the reorganization committee and the new company of his claim, and that the judgment would be a charge on the property in the hands of the purchaser, notwithstanding which the new company continued defending his suit and the new securities were issued, *held,* that the creditor was not guilty of laches; that his failure to file his claim within the time limited in the foreclosure case and thus conform to the terms of the reorganization plan, did not bar him from participating in its benefits with the other unsecured creditors, if that were still equitably possible; and that such relief might be had as well upon an intervening petition as upon an original bill."

In the opinion, the Court said:

"While the Court of Appeals [14 F. (2d), 284] erred in granting the specific relief prayed in the petition for intervention, it does not follow that Spiller must be denied all remedy. He was guilty of a serious inadvertence in not filing his claim in the receivership suit within the time limited by the interlocutory order. But it is clear that he has not been guilty of laches. *Southern Pacific Co. v. Bogert,* 250 U. S., 483, 488-490 [39 S. Ct., 533, 63 L. Ed., 1099]. And it does not appear that his inadvertence misled in any way the Court, the receivers, the reorganization committee or the new company. He had prosecuted his claim with vigor for years before the receivers were appointed. His diligence does not appear to have slackened either during the receivership or after the foreclosure sale. Throughout the whole period the claim appears to have been resisted with equal vigor. After the old company ceased to function, counsel for the receivers conducted the defense. After the receivers ceased to function, counsel for the new company conducted the defense. It is clear that neither the receivers nor the new company considered the failure to file the claim in the receivership a bar to the relief.

"Before Spiller recovered judgment in the trial Court the sale on foreclosure was had; but the hearing on the order to confirm the sale was yet to be held. At that hearing Spiller gave, before the confirmation of the sale, notice in open Court, and otherwise to the old company, to the receivers, to the reorganization committee and to the new company, that he had recovered judgment fourteen days before. He notified them that he claimed that the purchaser would take the property subject to all his rights; and that those included a charge upon the property in the hands of the purchaser for full payment of the judgment. With knowledge of Spiller's claims, the reorganization committee and the new company took over the property. Later, the new company assumed the further defense to the action in which the judgment had been recovered. The issue of the securities of the new company and the distribution of its stock among stockholders in the old occurred after these notices of Spiller's claim had been given. Under such circumstances neither the long delay nor the failure to file claims as required by the interlocutory and final decrees should operate to prevent the appropriate relief; and the District Court had jurisdiction to grant it."

I do not think that it is a matter of any consequence that the purchasers of the stock had not organized a new corporation, which they could have easily done. The point is that the plaintiffs had the right, and it was their duty, to come into the Federal Court and participate in the distribution. They have only themselves to blame for not doing this, and should not make the purchasers of the stock, who were entirely relying upon the records and orders of the Court, which had full jurisdiction of the estate, and who had no knowlege of the outstanding claim, suffer as a consequence of their neglect.

For these reasons I think that the decree should be reversed.