## UNITED STATES v. BRABHAM.
### Civ. A. No. 3489.

United States District Court
E. D. South Carolina, Aiken Division.
July 14, 1954.

N. Welch Morrisette, Jr., U. S. Atty., and Irvine F. Belser, Jr., Asst. U. S. Atty., Columbia, S. C., for plaintiff.

Randolph Murdaugh, Hampton, S. C., for defendant.

WYCHE, District Judge.

This is an action for the alleged conversion by the defendant of certain oats under mortgage to the plaintiff.

The facts are stipulated and are as follows:

"On February 23, 1951, one James Everett Lee, of Beldoc, Allendale County, South Carolina, borrowed $1,500.00 from the Farmers Home Administration, an agency of the United States of America, to finance the planting, cultivating, making, and harvesting of his crops for the year 1951. In order to secure this loan, Lee executed and delivered to the FHA a crop and chattel mortgage covering all crops of whatever description then planted or growing or to be thereafter planted or grown upon certain described lands within twelve months from that date. This crop and chattel mortgage was recorded April 3, 1951, in the public records of Allendale County, South Carolina, in Chattel Mortgage Book 72 at Page 148.

"Thereafter on the 5th day of June, 1951, Lee sold to Carlisle Brabham, do-

ing business as Brabham Farm Products Company, Allendale, South Carolina, 227 bushels of oats grown on the described farm and covered by the aforesaid FHA mortgage. Although the mortgage had been duly recorded as aforesaid, Brabham had no actual knowledge thereof. It had been the practice of the FHA County Supervisor in Allendale for several years to mail to Defendant Carlisle Brabham and other buyers of farm prodducts in Allendale County a list of persons who had borrowed money from the FHA and who had given the FHA mortgages on their crops, in order to inform buyers as to those farmers whose crops were subject to the lien of such mortgages. No list of this sort was mailed to Defendant Brabham for the 1951 crop year.

"The purchase price paid by Brabham and received by Lee for the oats was $158.90. Lee did not apply this money on his indebtedness to the FHA. The sale was made without the knowledge or consent of the officials of the Farmers Home Administration.

"At the time of the above purchase and sale Lee was indebted to the United States on said crop and chattel mortgage in an amount exceeding the sum of $158.90, the purchase price of said oats. At the time of the commencement of this action on August 18, 1953, Lee remained indebted to the United States in the sum of $85.87, with additional interest from that date on the principal balance of $60.59 at the rate of 5 per cent, for a present total indebtedness of $87.87 as of April 18, 1954.

"On January 30, 1952, Lee made a second loan from the Farmers Home Administration in the amount of $2,800.00 to finance his 1952 crop and gave to the FHA another crop and chattel mortgage covering all of his 1952 crop. This mortgage was duly recorded January 30, 1952, in the public records of Allendale County, South Carolina, in Chattel Mortgage Book 72 at Page 223. On May 28, 1952, the FHA County Supervisor in Allendale mailed to Defendant Carlisle Brabham and other buyers of farm products in Allendale County a list of persons who had borrowed money from the FHA and who had given the FHA mortgages on their crops, in order to inform buyers as to those farmers whose crops were subject to the lien of such mortgages. The name of borrower Lee was included in this list.

"During the months of June and July, 1952, on five different occasions, a total of five loads of oats grown on the farm operated by Lee and covered by the FHA mortgage were purchased by defendant Brabham for the total purchase price of $450.00. These oats were bought from one John Mixon, a person who had worked for Lee on his farm in 1951 and 1952. All five sales were made in Mixon's name and Mixon did not advise Brabham of his agency for Lee but made over-the-counter sales in a normal manner, making no specific reference as to whether he or someone else owned the oats. Payments for two of the sales, the first and last, were made by check to John Mixon by Brabham. Payments for the other three were made in cash paid to John Mixon by Brabham's employee. All monies received by Mixon were turned over to Lee without the knowledge of Brabham. The first check was endorsed by John Mixon and A. B. Beverage Co., the second check was endorsed only by John Mixon. Neither was endorsed by Lee, but Lee did receive the proceeds of both, without the knowledge of Brabham.

"The 1952 crop and chattel mortgage contained the same provision as the 1951 mortgage prohibiting sale or removal of the mortgaged property by the borrower or others without the written consent of the FHA. As in 1951, the sale was made by Lee without the knowledge or consent of FHA officials. Although the mortgage given by Lee had been recorded, defendant Brabham did not know that the oats belonged to Lee or that they were subject to the lien of the FHA mortgage.

"At the time of the sale of the oats Lee was indebted to the United States in an amount exceeding the sum of

$2,800.00 and at the time of the initiation of this action and now remains indebted to the FHA in an amount exceeding the sum of $2,500.00.

"Some time after the above sales, officials of the FHA learned of the unauthorized sale of the mortgaged property by Lee to defendant Brabham and initiated an investigation which revealed the facts set out herein.

"After default by Lee on the two notes and mortgages, the United States brought action on May 21, 1953 against Lee for the balance due. Lee allowed the action to go against him by default, and judgment was entered against him July 10, 1953 in the total amount of $2,744.66. The judgment remains unsatisfied because of Lee's lack of assets.

"Plaintiff has demanded that the Defendant Brabham return the oats purchased by Defendant Brabham from Lee in 1951 and 1952, or account to it for their value as of the date of their purchase, $158.90 and $450.00, respectively, with interest from the date of said purchases, or the remaining balance still due on the loans secured by the oats, whichever is less. Defendant has refused to return the oats or to pay the Plaintiff their monetary value or the balance due on the loans."

■ Lee's mortgage on the oats and other crops in 1951 had been properly recorded, so that the defendant had constructive notice of the existence of the mortgage; it is conceded, however, that the defendant did not have actual knowledge of the mortgage and purchased them in good faith, without any intention to convert property under lien to the Government; it must be presumed that in doing so he relied upon the absence of a list from the FHA advising him of the farmers in the county who had mortgaged their crops to the FHA that year. The practice of the local FHA supervisor of furnishing such a list to the defendant and other buyers for several years past had caused the defendant to rely upon such notice rather than upon the records in the office of the Clerk of Court for the county, and the failure of the FHA to provide the defendant

with such a list in 1951, lulled him into the mistaken belief that there were no such outstanding mortgages at that time and that he could safely purchase farm products. Under the circumstances, it is my opinion that the Government is estopped to assert now the lien of its mortgage against the defendant. 31 C.J.S., Estoppel, §§ 69, 102, pp. 261, 323.

It is, therefore, my opinion that plaintiff's claim for $60.59, plus interest, for the alleged conversion of the 227 bushels of 1951 oats should be denied, and

It is so ordered, and judgment upon this claim should be entered for the defendant.

■ Referring to the purchase by the defendant of the five loads of oats in 1952, the FHA had this time not only properly recorded the mortgage, but had also mailed the defendant a mortgagor list which included the name of Lee. The defendant, therefore, had both constructive and actual knowledge of the existence of Lee's mortgage. Section 60–101, 1952 Code of Laws of South Carolina; Little v. Southern Cotton Oil Co., 156 S.C. 480, 153 S.E. 462; Charleston Live Stock Co. v. Collins, 79 S.C. 383, 60 S.E. 944.

The defendant contends, however, that the fact that he purchased the oats from an employee of Lee and did not know that the oats belonged to Lee, should absolve him of the lien of Lee's mortgage.

A person who purchases personal property from one not authorized to sell the same may be held for the conversion thereof, regardless of the fact that the purchaser was honestly mistaken, or acted innocently, in good faith, and without knowledge of the seller's right to make the sale; where a purchaser had constructive notice of the mortgage, the purchaser's good faith is immaterial; and the fact that the converter acted in good faith is no defense.

■ I must, therefore, conclude that the defendant's good faith and lack of knowledge that the oats he was purchasing from Mixon had been mortgaged by Lee to the FHA are immaterial; that the oats were subject to the

lien of a properly recorded mortgage, of which he had full knowledge, and his purchase of them, and refusal to return them, constituted a conversion for which he must respond in damages.

The defendant is liable to the plaintiff for the fair market value of the five loads of 1952 oats, as of the time of their purchase by the defendant, with interest at the legal rate, from the date of conversion. There being no evidence to the contrary, the price paid by defendant and received by Lee for the oats is the proper measure of their fair market value.

For the foregoing reasons, it is, therefore,

Ordered, adjudged and decreed that plaintiff United States of America have judgment against defendant Carlisle Brabham, doing business as Brabham Farm Products Company, in the sum of $450, with interest from the date of conversion of the oats at the rate of six per cent. per annum, and for the costs of this action; and the Clerk of Court is hereby authorized to enter judgment for the same forthwith.