**UNITED STATES of America,**
**Plaintiff,**

v.

**C. C. SMITH, L. H. Bane and James Battle, d/b/a Neal & Dixon Warehouse,**
**Defendants.**

**Civ. A. No. 7872.**

United States District Court
E. D. South Carolina,
Florence Division.

Jan. 14, 1965.

Terrell L. Glenn, U. S. Atty., Thomas P. Simpson, Asst. U. S. Atty., Charleston, S. C., for plaintiff.

Gasque & Seals, Marion, S. C., for defendants.

WYCHE, District Judge.

The United States of America in this action seeks to recover the sum of $2,-149.76 plus interest in the amount of $205.21 as of June 1, 1962, together with interest thereafter at the daily rate of $0.2945. The action is based upon an alleged conversion by defendants by the sale at public auction of tobacco against which plaintiff had a publicly recorded lien.

This cause came on for trial before me without a jury upon the issues made by the complaint and answer, and having heard testimony of witnesses and having observed their conduct and demeanor on the stand, and having weighed their credibility and having considered the exhibits offered, and being fully advised in the premises, in compliance with Rule 52(a), Rules of Civil Procedure, I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### FINDINGS OF FACT

The defendants C. C. Smith and L. H. Bane are residents of Mullins, Marion

County, South Carolina, and the defendant James Battle is a resident of Nichols, Marion County, South Carolina, within the jurisdiction of this Court. Defendants, as partners, own and operate Neal & Dixon Warehouse, South Main Street, Mullins, South Carolina.

A promissory note was executed by Lemuel C. Stewart of Marlboro County, South Carolina, to the Farmers Home Administration, on January 29, 1960, in the principal sum of $2,500.00 and was due and payable October 31, 1960. To secure this promissory note, a crop and chattel mortgage was given by Lemuel C. Stewart to Farmers Home Administration, which covered, " * * * his interest in the following crops or chattels, all of which are located or to be located on the premises known as the Wallace farm or ranch, located approximately 3–4 miles in a northerly direction from the Town or City of Wallace in the County of Marlboro and State of South Carolina, said premises consisting of a parcel or parcels of land, in the County(ies) of Marlboro, and State of South Carolina, and more specifically described as follows: All tobacco grown on the farms of Tom Wallace, W. P. Wallace, and Mrs. P. A. Wallace, Sr. consisting of fourteen (14) acres, more or less, and surrounded by other Wallace lands, or at any other place in the State of South Carolina: (1) All crops planted or grown within one year from the date of this mortgage, described as follows: All crops of tobacco now planted or growing or to be planted or grown within twelve (12) months from the date hereof upon the above described land. * * * (3) Other chattels described as follows: * * * 1 Tractor * * * 1 Transplanter * * * 1 Moldboard Plow * * 1 Planter & fert. * * * 1 Cult. * * 1 Duster * * * 1 Disc * * * including also any replacement of, or additions to such chattels."

The crop and chattel mortgage was duly recorded in the office of the Clerk of Court for Marlboro County, South Carolina, on February 26, 1960, in Book 198, at page 634, in acccordance with Section 60–101, Code of Laws of South Carolina, 1962.

Lemuel C. Stewart was a sharecropper for the Wallaces' and had a fifty per cent. interest in the tobacco crops grown. During the period from August 12, 1960, through September 23, 1960, Lemuel C. Stewart sold through the defendants' warehouse at Mullins, South Carolina, a total of 18,150 pounds of tobacco for the total sum of $10,756.44 and in each instance defendants issued a check to Lemuel C. Stewart for one-half of the total price paid.

Actual notice was also given the defendants of the indebtedness of Lemuel C. Stewart to the Farmers Home Administration on August 17, 1960, when the office of the Marlboro County Supervisor for the Farmers Home Administration sent a letter to the defendants at Mullins, South Carolina, which had attached to it a list of farmers from Marlboro County who had given mortgages upon their crops to the Farmers Home Administration and the name of Lemuel C. Stewart appeared on such list.

The defendants paid directly to Lemuel C. Stewart in excess of $5,000.00 after said mortgage had been recorded and subsequent to the mailing of the notice.

The tobacco marketing cards introduced in evidence cover the sale of the tobacco involved in this controversy, and show that there was one sale of 1,022 pounds of tobacco for the total sum of $383.38 on August 12, 1960, and all of the remaining sales were for a period commencing September 1, 1960, and ending September 23, 1960.

After the note of Lemuel C. Stewart to the Farmers Home Administration was not paid, the foregoing "Other Chattels" listed on the crop and chattel mortgage were sold by the Farmers Home Administration and the net proceeds were applied on the indebtedness of Lemuel C. Stewart, leaving a principal balance of $2,149.76.

Under the foregoing facts the plaintiff is entitled to recover against the defendants the sum of Two Thousand, One Hun-

dred, Forty Nine and 76/100 ($2,149.76) Dollars, with interest.

## CONCLUSIONS OF LAW

This Court has jurisdiction of the parties and of the subject matter. Jurisdiction is not based upon diversity of citizenship but is based upon 28 U.S.C.A. § 1345, authorizing the United States to sue in the United States District Court.

█ Liability of warehousemen to federal government for conducting sale of tobacco crop in which Farmers Home Administration had recorded security interest is governed by federal law.

█ The United States has the right to maintain this action and such right gives the Farmers Home Administration an additional remedy which augments the integrity of its security interest. If the Agency was limited to suing the mortgagor the ease with which loans could be made would be greatly impaired. The warehousemen earned commissions from the sale of the tobacco and had it in their power to protect themselves against such losses as that which defendants incurred in the instant case. Costs of insurance had they been insured could have been regained from profits. No similar means are available to the taxpayers who support the federal fisc, nor to the United States when it makes loans to further national interest.

The defendants by selling the property interfered with and converted the Farmers Home Administration's right to the tobacco and therefore must be held to be strictly accountable. Liability may also be imposed on the ground that the warehousemen as agents of the mortgagor stand in the shoes of their principal. This is a principle embodied in the general federal law of agency and is a corollary to the established agency principle that one is not excused from the consequences of his action because he acts at the behest of another. This reasoning for holding the warehousemen accountable applies with equal force when the United States asserts its rights. United States v. Sommerville, (CA 3) 324 F.2d

712 (1963); see also, United States v. Brabham, (E.D.S.C.) 122 F.Supp. 570 (1954); United States v. Covington Ind. Tobacco Warehouse Co. (E.D.Ky.) 152 F.Supp. 612 (1957).

Under the foregoing authorities, it is my opinion that plaintiff is entitled to have judgment against the defendants in the amount of Two Thousand, One Hundred, Forty Nine and 76/100 ($2,149.76) Dollars, together with interest to be hereafter calculated, and an appropriate order to be submitted by the parties, and

It is so ordered.