**UNITED STATES of America**

v.

**Walter A. HEXT, Sr., W. A. Hext & Sons Gin Company, Inc., Marshall & Marshall, a corporation, and Harlingen Compress Company.**

**Civ. A. No. 65–B–75.**

United States District Court
S. D. Texas,
Brownsville Division.

April 7, 1969.

Anthony J. P. Farris, U. S. Atty., and Frank C. Cooksey, Asst. U. S. Atty., Houston, Tex., for plaintiff.

Carter, Stiernberg, Skaggs & Koppel (Rollins M. Koppel), Harlingen, Tex., for defendant Marshall & Marshall.

Bonner & Ball (Nile E. Ball), Harlingen, Tex., for third-party defendant Harlingen Compress Co.

## MEMORANDUM

GARZA, District Judge.

This suit is one based on conversion and statutory violation. It concerns the activities of three parties and their dealings with some 578 bales of cotton upon which the United States had a valid crop chattel mortgage lien.

The Court has been given jurisdiction over this matter pursuant to 28 U.S.C. § 1345, and this jurisdiction has not been challenged in any way.

The Defendants are citizens of, and also doing business in the State of Texas.

Loans made by the United States through the Farmers Home Administration have given rise to this lawsuit by the Government.

In 1961 the United States, through the Farmers Home Administration, loaned the Defendant Walter A. Hext, Sr., the sum of $48,720.00 for which the Defendant Hext gave a promissory note.

In May, 1962, the Farmers Home Administration loaned the Defendant Hext an additional $10,000.00 for which he gave another note.

In June, 1962, as collateral security for the payment of these two notes, the Defendant Hext executed and delivered to the United States, through the Farmers Home Administration, a crop and chattel mortgage on the crops to be raised on certain pieces of property. The crop and chattel mortgage was duly filed and recorded on July 12, 1962, in the Chattel Mortgage Records of Cameron County, Texas.

The Defendant Hext was also in the ginning business, and for all intents and purposes was the sole owner of the W. A. Hext & Sons Gin Company, Inc.

During the crop year of 1962, Hext raised the 578 bales of cotton in question, ginned them in his own gin, and sold them through his gin to various purchasers. The proceeds therefrom were put in his gin account, and at the end of the season the Defendant Hext inquired of his bookkeeper how much money was left in the gin account, and upon ascertaining that there was $40,-000.00, he got a check made out to himself which he deposited and he, in turn, sent this amount to the Government to apply on the notes that he had given the Farmers Home Administration.

The Government later recovered the sum of $1,956.61 of money that was kept in escrow to insure the plow-up of the cotton, and the United States is now suing for the principal sum of $18,139.-07 plus accrued interest as of February 13, 1967, of $1,857.24 plus interest at the rate of $1.4909 per day to the date of judgment in this case.

There is no question that the Government had a valid crop chattel mortgage on the 578 bales of cotton in question.

During the months of July, August and September, 1962, the Defendant Hext sold to the Defendant W. A. Hext

& Sons Gin Company, Inc., at least 578 bales of cotton on which the Government had a crop chattel mortgage, and the gin, for all practical purposes the Defendant Hext himself as has been mentioned heretofore, sold the same to some twelve different companies for the sum total of $92,581.47 gross.

It is assumed for the purposes of this lawsuit that the $40,000.00 paid on the notes by Hext and the $1,956.61 which was obtained from an escrow account held by the State, came from the proceeds of the sale of the cotton in question.

In this cause of action the United States is claiming that all of the proceeds of the sale were not applied to the indebtedness and were converted by the Defendants Marshall & Marshall and Harlingen Compress Company in derrogation of its rights.

The Government alleges that the converters were Defendants Hext, the W. A. Hext & Sons Gin Company (for all practical purposes Hext himself), Marshall & Marshall (who was a selling agent or showing agent), and Harlingen Compress Company (in whose warehouse the cotton was stored and who issued the negotiable warehouse receipts on said cotton).

There is no question that the amount claimed by the United States is due and owing by the Defendant Hext. Although Hext appeared under subpoena as a witness in the trial of this cause, he totally made default, never answered, and is for all practical purposes insolvent. A default judgment against him has heretofore been granted for the full amount claimed by the Government.

The parties have filed extensive stipulations, and the Court has heard evidence from live witnesses, as well as portions of depositions taken in this cause.

We must determine whether or nor Marshall & Marshall is a converter, and whether or not the Harlingen Compress Company is guilty of conversion or a statutory violation.

Originally the Harlingen Compress Company was brought into this lawsuit by the Defendant Marshall & Marshall who was seeking contribution or indemnity against the Compress for violation of Article 5571, Vernon's Revised Annotated Civil Statutes of Texas, entitled "Cotton Under Lien", which reads as follows:

> "If there is any incumbrance or lien of any kind on said cotton at the time of its storage the nature and amount of same shall be clearly set out and it is hereby made the duty of the public warehouseman or his authorized agent issuing the receipt, to have said blank filled in and signed by the owner of the cotton before issuing a negotiable receipt against same. Such statement need not be made if a non-negotiable receipt is desired, but in such cases the public warehouseman issuing said receipt shall write or stamp across the face thereof the words 'non-negotiable.'"

The United States then asked for leave to amend its complaint and to sue the Compress as a party defendant.

The Plaintiff, United States of America, customarily sends a list of growers who have mortgaged their crops to the ginners. As a result, the problem we have presented here is usually worked out at the ginning stage of the process and everything runs smoothly thereafter, as the gin, being notified that a grower has given the United States a crop chattel mortgage, will make out all checks for the proceeds of the cotton it buys from the grower, jointly to the grower and the United States.

As has been explained, the ginner in this case was Hext himself, and this safeguard was lost to the Government since Hext put the proceeds of his cotton sales in his gin account.

The evidence before the Court shows that after the cotton grown by Hext was ginned and baled at his gin, it was trucked to the Defendant Harlingen Compress Company who, in turn, stored the cotton and issued negotiable warehouse receipts against the same. Some of these receipts were issued in the name of Hext as Grower-Owner, and some were sent in blank to the gin of origin for the gin to fill out the name of the individual owner.

In spite of the provisions of Art. 5571, the negotiable warehouse receipts issued by the Harlingen Compress Company not only failed to have a blank filled in and signed by the owner of the cotton with regard to whether or not it was encumbered, but the forms used by the Harlingen Compress Company did not even provide a blank for such purpose.

The Defendant Harlingen Compress Company claims this statute has been repealed by implication either by case law or various provisions of the Uniform Warehouse Receipts Act of the State of Texas. However, the Defendant Harlingen Compress Company cites no convincing authority for this proposition, and I find that there has been no explicit repeal of Art. 5571. Art. 5571 is not harmful to the operation of the Uniform Warehouse Receipts Act which was in force at the time this lawsuit arose. Today the Texas Uniform Commercial Code is applicable.

█ Repeal of a statute by implication is not favored in Texas. Gordon v. Lake, 163 Tex. 392, 356 S.W.2d 138.

█ In the absence of an express repeal by statute where there is no positive repugnance between the provisions of the old and new statutes, they will be construed so as to give effect to both if possible. Standard v. Sadler, Tex., 383 S.W.2d 391; Wintermann v. McDonald, 129 Tex. 275, 102 S.W.2d 167, at 171.

Although the Uniform Commercial Code was not in effect at the time this lawsuit arose, it is interesting to note that in Vol. 3 of Vernon's Texas Statutes Annotated, there is an appendix entitled "Laws Repealed by Uniform Commercial Code", which clearly sets out the articles that have been repealed, and Art. 5571 is not among those listed.

█ I find that Art. 5571 is still the law in Texas and has never been repealed either by the Uniform Warehouse Receipts Act or the Uniform Commercial Code.

█ A thorough search, not only by all parties but by this Court as well, has not revealed any case construing Art. 5571, but apparently it is not followed by warehousemen. However, unlike some things, a law does not wither and die from lack of use. It is the duty of the Legislature, not of the Courts, to repeal statutes no longer used or desired; and Art. 5571 still being alive and the law in Texas, Harlingen Compress Company is bound by it.

Art. 5571 might be subject to more than one interpretation. It can be argued that the warehouseman has an absolute duty to check out and inquire as to existing liens, and will be liable for any failure in this duty; or it can be argued that the warehouseman only has the duty to provide a blank on the warehouse receipt and to make the owner sign it. Which of these interpretations of Art. 5571 is correct is not necessary to a decision in this case, as the facts show conclusively that the Defendant Harlingen Compress Company had no blank available for the information as to liens on the cotton on its receipts, and much less had the same filled out and signed as required unless it was issuing a non-negotiable warehouse receipt.

As a result of the Defendant Harlingen Compress Company's failure to comply with Art. 5571, it greatly assisted in the conversion of this cotton to the detriment of the United States. If it had complied with the statute and had ascertained that there was a lien on the cotton, it would have issued non-negotiable

warehouse receipts and the buyers of the cotton could have made their checks payable jointly to Hext and the United States.

The Defendant Harlingen Compress Company is liable for the Plaintiff's loss, jointly and severally with the Defendant Hext, not only because of its failure to follow Art. 5571, but because of the dominion it exercised over the cotton stored in its warehouse and its issuance of the negotiable warehouse receipts. These acts of dominion over the cotton played a major role in its conversion, and Harlingen Compress Company is purely and simply a converter; and even though the evidence shows that Harlingen Compress Company was apparently innocent of any knowledge concerning the crop chattel mortgage given by Hext, it is the law that actual knowledge of an existing mortgage is not required to be held responsible for conversion. The Defendant Harlingen Compress Company, by issuing the warehouse receipts in Defendant Hext's name or in blank, committed an act of conversion to the detriment of the United States and its property rights in the cotton in question.

"Under present methods of communication and distribution chattel mortgages validly recorded would be worthless unless they are held to be valid against factors, bailees, commission merchants, brokers and warehousemen."

United States v. Covington Independent Tobacco Warehouse Co., D.C., 152 F. Supp. 612; United States v. C. C. Smith, L. H. Bane and James Battle, d/b/a West & Dixon Warehouses, D. C., 237 F.Supp. 29.

"A mortgagee may maintain an action of trover on account of the conversion of the mortgaged property. Usually such action is against the mortgagor and the purchaser and they are jointly liable to the mortgagee. Any one, however, who is instrumental in the disposition of the property in denial of the mortgagee's right, or who causes or induces such disposition of the property, may be held by the mortgagee for conversion."

Oats v. Dublin National Bank, 127 Tex. 2, 90 S.W.2d 824; Crawford Undertaking Co. v. Herman Siegel Inc., Tex.Civ. App., 230 S.W.2d 590.

If the United States was limited to suing the mortgagor, the ease with which loans could be made would be greatly impaired. The warehouseman, such as the Harlingen Compress, can protect himself from occurrences such as present in this case by insurance, the cost of which can be spread out. No similar adequate method is available to innocent buyers, taxpayers or the United States which makes these loans to further the national interest.

The parties have mainly stipulated as to the role of Marshall & Marshall in this transaction. After the cotton had been stored by the Defendant Harlingen Compress Company and warehouse receipts were issued, the Compress would cut a sample from each end of the bales stored and send the same to Marshall & Marshall. Marshall & Marshall did not receive the originals or copies of the warehouse receipts. All they did was to display the samples in their office. Cotton buyers would come and inspect cotton and examine the displays. Marshall & Marshall would then receive offers from various buyers to purchase various lots of the cotton in question. Defendant Marshall & Marshall, upon receipt of such offers to buy the cotton, communicated such offers for acceptance or rejection, and then relayed the response to the cotton company's representative making such offer.

Defendant Marshall & Marshall was instructed at times to accept offers for the 578 bales of cotton in question. Defendant Marshall & Marshall was not instructed to sell any bale of cotton at any particular price prior to the time an offer was received on a particular bale and submitted for acceptance or rejection.

After the receipt of an offer Defendant Hext would either accept or reject

such offer and would give the appropriate instruction to Defendant Marshall & Marshall who, in turn, would instruct the prospective buyer if the particular offer had been accepted or rejected.

Defendant Marshall & Marshall had no authority to communicate acceptance of an offer to buy any of the bales in question unless instructions were received from Defendant Hext to accept such offer.

As a part of its service to its customers, Defendant Marshall & Marshall performed various clerical tasks, including the preparation of an invoice, usually on forms furnished to Defendant Marshall & Marshall by its customers, and a draft. After Defendant Marshall & Marshall had prepared an invoice and a draft covering the cotton sold, they would then forward the invoice and draft to the office of the Gin Company.

Defendant Marshall & Marshall charged for its services the sum of fifty cents (50¢) per bale of cotton.

Defendant Marshall & Marshall had no actual knowledge that there was a chattel mortgage lien on the 578 bales of cotton involved in this lawsuit. Neither did Defendant Marshall & Marshall have actual knowledge that a chattel mortgage on said cotton was recorded and appeared of record in Vol. 231, p. 210, of the Chattel Mortgage Records of Cameron County, Texas.

Even though Defendant Marshall & Marshall is innocent as to actual knowledge of any mortgage, they still may be liable for the conversion. As mentioned earlier, innocence is no defense.

There is no question in this Court's mind that the participation by Defendant Marshall & Marshall was vital to the conversion, in that Defendant Marshall & Marshall was actually the selling agent of Defendant Hext.

Defendant Marshall & Marshall tries to relieve itself of liability by calling itself a showing agent.

It is easy to become embroiled in a question of semantics. The plain and simple fact is that Defendant Marshall & Marshall was the vehicle by which Defendant Hext sold his cotton.

The fact that Defendant Marshall & Marshall never had possession of the cotton is immaterial. They had the samples from each bale, and that is all that was needed to sell the cotton.

Also, the fact that Defendant Marshall & Marshall never actually received the proceeds is unimportant.

Each particular business has peculiarities of its own. In the cotton business, sales are handled as mentioned in this Memorandum.

Defendant Marshall & Marshall's role in a cotton sale is analogous to that of an auctioneer in cattle sales or to warehousemen in tobacco sales. They are analogous in that each is the vehicle or particular method of selling in the various fields. As such, they are liable even though they act without knowledge of a defect in the title.

There is no question that Defendant Marshall & Marshall was of great help to Defendant Hext in the conversion of this cotton by selling it for him. For having taken an active important role in this conversion, Defendant Marshall & Marshall is liable to the Plaintiff, United States of America, jointly and severally with Defendants Hext and Harlingen Compress Company. United States v. Carson, 6 Cir., 372 F.2d 429 (1967); United States v. Union Livestock Sales Co., 298 F.2d 755, 96 A.L.R.2d 199 (4 Cir., 1962); United States v. Covington Ind. Tobacco Warehouse Co., supra; John Clay & Co. Livestock Commission v. Clements, 214 F.2d 803 (5 Cir., 1954).

As has been mentioned heretofore, Marshall & Marshall has filed a claim over and against the Harlingen Compress Company for any amount it must pay the Government in this case, claiming that a violation of Art. 5571 by the Harlingen Compress Company entitles it to contribution or indemnity.

Professor Gus M. Hodges has an article entitled "Contribution and In-

demnity Among Tort Feasors", 26 Texas Law Review 150, which is applicable to the facts of this case. Treating a converter as a tort feasor, we glean from the Texas cases that a tort feasor's right to indemnity against another tort feasor is whether the tort feasor suing in tort would be entitled to recover. Union Iron & Metal Co., Inc. v. Gibson, Tex. Civ.App., 374 S.W.2d 458, writ of error ref., N.R.E.; South Austin Drive-In Theatre v. Thomison, Tex.Civ.App., 421 S.W.2d 933, writ of error ref., N.R.E.

If Harlingen Compress had complied with Art. 5571, nothing that Marshall & Marshall did could have worked to the detriment of the United States. Marshall & Marshall had a right to believe, when negotiable warehouse receipts were issued by the Harlingen Compress Company, that there was no impediment to the sale of the cotton it was showing to prospective buyers.

 Marshall & Marshall is, therefore, entitled to indemnity over and against Harlingen Compress Company for any amount it has to pay the Government as a result of the judgment in this case.

The last remaining question is the amount of the judgment in this case.

There is no question that the gross receipts from the sale of the mortaged cotton were $92,581.47. However, the Government knew that Hext was growing his cotton that he mortgaged on rented land, and the amount of the landlords' part of the cotton grown was $15,288.98. It has also been stipulated that harvesting and ginning expenses amounted to $19,688.15, and that the clean-up and plow-under expenses amounted to $2,700.00.

The Government is claiming that these harvesting and ginning expenses and clean-up and plow-under expenses are not to be deducted from the gross receipts on the sale of the mortgaged cotton.

 From all the evidence before me, I find that these costs are necessary to the growing of cotton and that they should be allowed. In fact, the Government in part admits that they are usually allowed.

 A breakdown, then, shows that $41,956.61 had been paid on the notes by Hext. Allowing the harvesting and ginning expenses, the landlords' rent and the clean-up and plow-under expenses, $79,633.74 of the gross receipts have been accounted for, leaving a balance of $12,947.73 of the gross receipts from the sale of the mortgaged cotton unaccounted for.

The United States should not be allowed to make a profit on innocent converters. All that the United States could have received from the sale of the mortgaged cotton over and above what it has already received, was $12,947.73.

The United States shall, therefore, have judgment in the sum of $12,947.73 against W. A. Hext & Sons Gin Company, Inc., Harlingen Compress Company and Marshall & Marshall, plus interest from and after September 1, 1962, to date of this judgment, jointly and severally.

The United States shall also have judgment against Walter A. Hext, Sr., in the sum of $18,139.07 plus accrued interest as of February 13, 1967, of $1,857.24, plus interest at the rate of $1.4909 per day to the date of judgment in this case.

This Memorandum constitutes the Findings of Fact and Conclusions of Law of this Court.

The parties will get together and prepare an appropriate judgment for entry in accordance with these Findings.

Clerk will send copies of this Memorandum to all counsel.