Roy MOSS, Jr., by and through his mother and next friend, Linda D. Moss, et al.

v.

**STAMFORD BOARD OF EDUCA·TION et al.**

Civ. No. B–586.

United States District Court,
D. Connecticut.

Nov. 14, 1972.

Steven P. Hershey, Stamford Legal Services, Stamford, Conn., for plaintiffs.

Theodore I. Koskoff, Bridgeport, Conn., for defendants.

NEWMAN, District Judge.

## MEMORANDUM OF DECISION ON MOTION TO DISMISS

This is a suit challenging an elementary school desegregation plan currently being implemented by the Stamford, Connecticut, Board of Education on the ground that it places unreasonable burdens upon Black and "Hispanic" children and thereby "stigmatizes" them on account of their race in violation of the equal protection clause of the Fourteenth Amendment. Defendants have moved to dismiss (a) for failure to state

a claim upon which relief can be granted and (b) because the subject matter of the suit is "solely within the administrative discretion" of the Board.

■ The second ground of the motion is plainly insufficient. School boards of course have broad discretion in discharging their responsibilities, and developing desegregation plans is "ordinarily" within that discretion. Allen v. Asheville City Board of Education, 434 F.2d 902, 905 (4th Cir. 1970). But that discretion cannot be exercised to achieve unconstitutional results. Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Lee v. Macon County Board of Education, 448 F.2d 746 (5th Cir. 1971); Brice v. Landis, 314 F.Supp. 974 (N.D.Cal.1969); Spangler v. Pasadena City Board of Education, 311 F.Supp. 501 (C.D.Cal.1970). Hence assertion of such discretion is not a ground for denying plaintiffs the opportunity to establish their claims.

The substance of plaintiffs' claims has been modified since the filing of the original complaint. As orginally framed, the complaint challenged features of the Board's plan which (a) closed Rice and Stevens Schools and closed the fourth and fifth grades at Ryle School (all three of which had predominantly Black enrollments) and (b) required busing of minority children from the closed schools to non-contiguous school districts. At oral argument on a motion for a preliminary injunction,[1] plaintiffs withdrew paragraph 7 of the prayer for relief of their original complaint, which had sought reopening of Stevens and the closed grades at Ryle, and their amended complaint omits these requests for relief. The claim of unconstitutional discrimination is now leveled essentially at the busing. As stated in plaintiffs' supplemental memorandum of law:

> Plaintiffs in the present case make no claim to a constitutional right to a neighborhood school. Nor do plaintiffs object to busing per se. They do object to being stigmatized on account of their race, and it merely happens to be that stigmatization is imposed through busing. They are stigmatized because they are required to travel to non-contiguous districts while ι 'l other children attend the school closest to their homes.

Defendants contend that this claim is insufficient as a matter of law, relying primarily on the Second Circuit's decision in Norwalk Core v. Norwalk Board of Education, 423 F.2d 121 (2d Cir. 1970). *Norwalk Core* upheld a desegregation plan under which three schools with predominantly Black enrollment were closed and their students bused to schools in predominantly White [2] neighborhoods. While this apparent similarity to the pending case has surface appeal, that decision cannot support a motion to dismiss for two reasons.

First, the decision did not establish as a matter of law that the claim of the plaintiffs in *Norwalk Core* was insufficient. It upheld, as not clearly erroneous, the factual findings of District (now Circuit) Judge Timbers that the decision of the School Board was made "in good faith and without improper racial motivation or arbitrary disregard of the rights of a minority. . . ." 298 F.Supp. 213 at 222; 423 F.2d at 124. The District Court credited trial testimony to establish that "nonracial considerations" justified the board's actions under the " 'heavier burden' test of Loving v. Virginia, 388 U.S. 1, 11 [, 87 S.Ct. 1817, 18 L.Ed.2d 1010] (1967). . . ." 298 F.Supp. 226. Thus,

1. This motion was subsequently withdrawn upon defendants' agreement to prepare for an early trial on the merits.

2. The reported cases involving racial discrimination have adopted a variety of styles concerning capitalization. Now that the words "white" and "black" are being used as the names of races, capitalization seems appropriate as a matter of etymology though perhaps not of anthropology. *See* "Capitalization," item 2.7, Webster's Third New International Dictionary p. 28a (1963).

rather than show that the plaintiffs' claim here is insufficient, *Norwalk Core* demonstrates that the claim is one which requires presentation of evidence to determine whether the alleged discrimination can be established and if so, whether it can be sufficiently justified.

Secondly, the claim asserted in *Norwalk Core* is significantly different from the claim asserted here. The District Court in *Norwalk Core* succinctly stated the claim as follows:

> Specifically, plaintiffs challenge the Board's action in busing Black and Puerto Rican children out of Black neighborhoods to [W]hite neighborhood schools *without maintaining Black neighborhood schools and cross-busing [W]hite children to such Black neighborhood schools.* *Id.* at 215. (Emphasis added).

Thus, busing the minority children was not objected to *per se;* it was challenged because it was being done without (a) maintaining a school in a Black neighborhood and (b) busing White children to such a school. The crucial issue thus became whether a school in a Black neighborhood could be closed. Since the plaintiffs there challenged the burden of busing only to the extent that it was a consequence of the closing of schools in the Black neighborhood, the District Court upheld the busing features of the plan simply on a finding that any burdens of such busing "although statistically related to race, actually stem from a valid administrative decision" concerning school locations. *Id.* at 222.

█ Plaintiffs here are not asserting a constitutional right to a neighborhood school. Nor are they claiming that the decision to close only the predominantly Black schools is unconstitutional.[3] *Compare* Lee v. Macon County Board of Education, *supra* (disapproving closing of Black schools for racial reasons) *with*

Carr v. Montgomery County Board of Education, 429 F.2d 382 (5th Cir. 1970) (approving closing of Black schools for non-racial reasons); *see also* Haney v. County Board of Education of Sevier County, 429 F.2d 364 (8th Cir. 1970) (requiring justification for closing Black schools). Their specific complaint is that even though the closing of their schools required busing, the Board has denied them equal protection of the laws by adopting a busing plan which unconstitutionally burdens them on account of their race. They do not attack, as did the *Norwalk Core* plaintiffs, the school closings that led to the busing. Their sole complaint is that the specific details of the Stamford busing plan discriminate on racial grounds. That issue was neither tendered nor decided in *Norwalk Core*.

█ It is not open to question that governmental action is properly challenged under the equal protection clause when it is alleged to discriminate on the basis of race. This principle applies in at least three different contexts. One is where governmental action uses a classification based explicitly on race. *See, e. g.,* McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). A second is where the governmental action, though not explicitly based on race, evidences a manifest purpose to exclude or otherwise burden a racial group. *See, e. g.,* Reece v. Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955). A third is where governmental action is neither explicitly nor implicitly designed to discriminate against a racial group, but its effect falls upon a racial group to a significantly disproportionate degree. Examples of this newly emerging claim arise in the fields of employment, *see, e. g.,* Castro v. Beecher, 459 F.2d 725 (1st Cir. 1972), municipal services, *see, e. g.,* Hawkins v. Town of Shaw, Mississippi, 437 F.2d 1286 (5th Cir. 1971),

---

3. If it is subsequently shown that the busing plan here challenged does impose a constitutionally significant burden upon plaintiffs, then plaintiffs may well be claiming, and may be entitled to establish, that the reasons for the school closings are relevant to a determination of whether the Board has adequately justified its busing plan.

adhered to en banc, 461 F.2d 1171 (5th Cir. 1972), and administration of governmental programs, *see, e. g.,* Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968).

The claim in this case is essentially in the third category, though it may involve aspects of the second category. To state a valid claim in this area, it is not necessary to allege that the challenged governmental action falls exclusively upon a racial group, though the degree to which a racial group must show it bears a disproportionate share of the burden is not clear. *See* Chance v. Board of Examiners, 458 F.2d 1167 (2d Cir. 1972) (relying on comparative pass-fail rates to establish claim that examination discriminates); Beal v. Lindsay, 468 F.2d 287 (2d Cir. 1972) (characterizing area as "predominantly" populated by minority racial group for purposes of stating adequate claim that efforts to provide municipal services discriminate). Plaintiffs have alleged here that the burden of cross-district busing has not been applied "equally to minority and majority children." While it is doubtful that mathematical equality is required, *cf.* Norwalk Core v. Norwalk Redevelopment Agency, *supra* (requiring proof that a governmental standard is being met "in general" as adequately for non-Whites as it is for Whites), plaintiffs are entitled to prove that the burden of which they complain does fall upon them more than upon Whites so as to create "a disparity of sufficient magnitude to amount to a *prima facie* case of invidious *de facto* discrimination." Chance v. Board of Examiners, *supra,* 458 F.2d at 1176.

It is not clear from the complaint the full extent of the burden the plaintiffs are seeking to establish, though, as previously noted, the burden is alleged to arise largely if not entirely from the Board's busing plan. At a minimum plaintiffs are seeking to prove that they are burdened by being bused to schools other than those closest to their homes, while Whites attend the schools closest to their homes. Elements of this burden may include the distance traveled, the time required for traveling, and the stigma of being singled out for transfer to distant schools.

Burdens of this sort, even when arising out of efforts to achieve racial desegregation, have been held sufficient to state valid equal protection claims. As stated in Brice v. Landis, *supra,* 314 F. Supp. at 978:

The minority children are placed in the position of what may be described as second-class pupils. White pupils, realizing that they are permitted to attend neighborhood schools as usual, may come to regard themselves as "natives" and to resent the [N]egro children bussed into the [W]hite schools every school day as intruding "foreigners."

*See also* Spangler v. Pasadena City Board of Education, *supra.*

■ Of course establishing that the effect of a constitutionally significant burden falls disproportionately on a racial group does not entitle plaintiffs to relief; it does, however, require justification by the governmental agency involved. *See, e. g.,* Chance v. Board of Examiners, *supra.* The proper test for assessing that justification has not been clearly developed, nor will it be susceptible to easy application in a context like the present one where a school board is moving in apparent good faith to achieve racial balance among its elementary schools. This is not to suggest that the laudable objective of racially balanced schools can justify all techniques that impose burdens upon a racial group. It does mean that determination of whether the burden is constitutionally significant and whether the justification is constitutionally sufficient will be made not in the abstract world of theory but in the real world of school boards, school buildings, and school children.

Though the complaint sufficiently states a claim to survive defendants' motion to dismiss, I am not persuaded that the proper course at this point is a full trial on the merits. The nature of the burden being asserted requires clarifica-

tion, and the proof offered to establish any constitutionally significant burden may well determine what type of proof will be offered to established justification. Moreover, the issue of justification may well require extensive testimony from experts involving many aspects of the operations of the Stamford elementary schools. In these circumstances it seems preferable and "in furtherance of convenience" to schedule for trial initially the issue of whether the plaintiffs are in fact being subjected to a constitutionally significant burden. Fed.R.Civ.P. 42(b). The trial of that issue will involve only the statistics concerning the defendants' busing plan, including such data as distances, travel times, and relationship of schools attended to residences. Hopefully, most of this data can be supplied in written form, with only brief testimony needed for clarification.

Accordingly, the motion to dismiss is denied, and a separate trial in accordance with the preceding paragraph will be scheduled at an early date.