O’Neall J.
delivered the opinion of the Court.
The first and fourth grounds of the plaintiff’s motion seem, from the Judge’s report, to have been founded in mistake; and need therefore no comment.
The second and third grounds make the question, whether the Judge was right in saying to the jury, that to recover on a bet, there must be perfect mutuality: that is, whoever might be the winner, he could, from the terms of the bet, so designate the stake by proof as to entitle him to recover it. That this is a right view of the law, I do not entertain a doubt. Any other would lead to this strange result, that if one party were the winner, he might recover, while the other party, if he had been successful, could not recover, because he could not ascertain by proof what he had won. S uch a wager never could be regarded as an enforcible contract. In this case the evidence leaves it perfectly uncertain what the plaintiff bet;—a negro, or his value, the witnesses think was bet: but what negro or what sum, they have been unable to say. Under such circumstances, it is in vain for the plaintiff to say that he has made out a case, on which he can stand, in a court of justice.
On the 5th ground, if the Judge had charged the jury that the bet had an immoral tendency, I should have entirely agreed with him. For every bet, of this or any other kind, tends directly to beget a desire of possessing another’s money, or property, without an equivalent. Men, acted on by such influences, may easily become gamblers; and then the road to every other vice is broad and plain. In this very case, nothing, it seems to me, can be more to be regretted, than that brothers-in-law should have been employed in staking their own substance upon the amount of a part of their deceased father’s estate. But it docs not stop there, for out of an idle, angry bet, has grown *85 an embittered law suit, which, if it has its usual tendency, may sow discord around the family altar, and sever for ever the dearest relations of life. This is, in itself, “an immoral tendency,”—hateful, horrible, and deformed, and one against which the law should as sedulously guard, as against any other.
Í agree fully, and so do a large majority of the Court, in the opinion of the Recorder, as expressed in Laval v. Myers, 1 Bail., 486, “that all wagers are unlawful, and not to be recovered in courts of justice.” We all admit that in England, wagers upon indifferent matters without interest to either of the parties, and in which there may be perfect fairness and mutuality, are allowed. But the Recorder has fully shewn by a review of all the cases, that the decision in DcCosta v. Jones, which gave rise to this doctrine, has been uniformly regretted in all the subsequent cases; and that the opinion of Judge Bullcr. dissenting from the majority of the Court, has met with universal approbation. Mr. Chitty’s late work on Contracts, 6th Amer. Ed., from the 3rd London Ed., 496, shews that die hostility of the English Judges has not at all abated. The cases referred to by him in Exchequer Reports, shew that they have refused in many instances to try cases on wagers until they had nothing else to do: and the utmost favor which such cases have been able to obtain, is, that they should be tried at soma time.
The restrictions upon the legality of wagers have been multiplied at every step by the Courts in England, as will be seen by referring to Chitty on Contracts, 496, 497. No one can read the English books without feeling that the Judges there loathe the fetters with which they are bound on this subject, and that they most sincerely desire to say if they could, wagers are unlawful and cannot be recovered.
jHere, fortunately, we arc under no such restraints. The case of Laval v. Myers, has opened the whole matter, with a very decided opinion from a very able Judge, (Recorder Prioleau,) against their legality, and a full concurrence in his views, by the well known and justly distinguished Judges of the Court of Appeals, Colcock and Johnson. This removed much of the force of Hasket ads Wooton, 1 N. & M’C., 180, if it even were a decision on this point. Judge Cheves, who delivered the *86 opinion in that case, does not seem to have turned his powerful mind to the consideration of the point now before us. He assumed (on the authority of Goode v. Elliott, 3 T. R., 693, 695,) the principle to be law, that wagers are not illegal except “when forbidden by statutory provisions, when they are calculated to injure third persons, and thereby disturb the peace and comfort of society, or when they militate against the morality or sound policy of the State.” Fortunately, this dictum of a great Judge was not necessary to the decision of the case, which was for the recovery of $60 won on a horse race. This plainly could ..d be recovered under tho provisions of 9 Anne, ch. 14: and tbd. all which was necessary to be said; all beyond it was mere obiter. Hence, notwithstanding our great respect for every thing said by such a Judge as Cheves, we feel that this dictum opposes no obstacle to our adopting later and wiser views against the allowance of wagers.
The only cases of wagers which have been sustained in this State by the Court of Appeals, are cases on bets under £lQ won on horse races. They have been sustained under the exception in the statute; and hence are no authority in favor of other wagers. But I am prepared hereafter to declare them unlawful, on their clear immoral tendency, and thus to sweep from our Courts the whole body of wagers, great and small.
The motion is dismissed.
Richardson J., and Frost J., do not concur in holding that an action on a wager is not maintainable.