635 S.E.2d 545

Christine L. MYATT, as Receiver of Elfindepan, S.A.
and Strategic Asset Funds, S.A., Appellant,

v.

RHBT FINANCIAL CORPORATION and
Robert M. Yoffie, Defendants,

of whom RHBT Financial Corporation is the, Respondent.

No. 4144.

Court of Appeals of South Carolina.

Heard May 9, 2006.
Decided July 31, 2006.
Rehearing Denied Sept. 25, 2006.

J. Scott Hale, of Greensboro, NC; and Russell T. Burke and Amy Harmon Geddes, both of Columbia, for Appellant.

Robert Y. Knowlton and Sarah P. Spruill, both of Columbia, for Respondent.

BEATTY, J.:

Christine L. Myatt, as receiver of Elfindepan, S.A. and Strategic Asset Funds, S.A. (SAF), appeals the trial court's order granting RHBT Financial Corporation's (the Bank's) summary judgment motion on Myatt's claims for breach of contract, breach of fiduciary duty/constructive fraud, negligence/gross negligence, negligent supervision, unfair and deceptive trade practices, and aiding and abetting a breach of fiduciary duty.[1] We affirm.

---

1. The trial court's order indicates RHBT Financial Corporation "is the holding company for Rock Hill Bank & Trust." Rock Hill Bank & Trust is the entity that engaged in the actions relevant to this appeal. Because the status of these entities has no bearing on this appeal, we refer to both as "the Bank."

## FACTS

Elfindepan is a Costa Rican corporation that orchestrated high-yield investment schemes. SAF is a Panamanian entity that also facilitated these schemes. Tracy Calvin Dunlap, Jr., acted as president of both of these entities.

In early 2000, Stephen Dennis introduced Dunlap to Robert M. Yoffie. At the time, Yoffie acted as the Senior Vice President and Trust Officer of the Bank. On February 23, 2000, Dunlap entered into an agency agreement with the Bank. This agreement provided that the Bank would act as an agent for Elfindepan, which was listed as the principal. The agreement created a banking account at the Bank and listed Dunlap as the signatory on the account.

On May 22, 2000, Dunlap entered into another banking agreement with the Bank. The account owner was "Tracy Dunlap DBA S.A.F." Dunlap was the only signatory on this agreement. On June 8, 2000, Dunlap changed this agreement to a corporate account, indicating SAF was the account owner and authorizing himself and Katherine Kennedy to be signatories on the account. Dunlap later deposited checks made payable to Elfindepan and SAF into these accounts and directed the Bank to distribute the deposited funds to various people and entities.

Subsequently, the United States Securities and Exchange Commission (SEC) filed a complaint in federal court against Elfindepan, SAF, and Dunlap, alleging they defrauded investors. The federal court later issued orders appointing Myatt as the receiver of both Elfindepan and SAF. On November 15, 2002, Myatt (the Receiver), acting in this capacity, filed a complaint against the Bank and Yoffie, alleging causes of action for breach of contract, breach of fiduciary duty/constructive fraud, negligence/gross negligence, negligent supervision, unfair and deceptive trade practices, and aiding and abetting a breach of fiduciary duty.

The Bank answered, denying all of the Receiver's claims and asserting numerous affirmative defenses. After discovery, the Bank moved for summary judgment on several grounds, including the doctrine of *in pari delicto*. In addition, the Receiver moved for summary judgment on her claim for aiding and abetting a breach of fiduciary duty. The trial court

denied the Receiver's motion and granted summary judgment to the Bank, holding the doctrine of *in pari delicto* barred all of the Receiver's claims. The court also granted summary judgment to the Bank on the alternative grounds that: (1) Dunlap controlled all aspects of SAF's and Elfindepan's business; (2) the Bank did not breach any duty to the two corporations; (3) the constructive fraud claim was barred because the Bank did not make any false representations; (4) any potential claim under the unrecognized cause of action for aiding and abetting a breach of fiduciary duty was barred because there was no evidence that the Bank knowingly participated with Dunlap to breach a fiduciary duty to the two corporations; (5) the Receiver's unfair trade practices claim failed because the Bank's action of releasing the funds pursuant to Dunlap's instructions were permitted under the law; and (6) the Receiver could not show that the Bank's actions damaged the two corporations.[2] This appeal followed.

## STANDARD OF REVIEW

"An appellate court reviews the grant of summary judgment under the same standard applied by the trial court." *Houck v. State Farm Fire & Cas. Ins. Co.*, 366 S.C. 7, 11, 620 S.E.2d 326, 329 (2005). The trial court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Gadson v. Hembree*, 364 S.C. 316, 320, 613 S.E.2d 533, 535 (2005). To determine whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Helms Realty, Inc. v. Gibson–Wall Co.*, 363 S.C. 334, 340, 611 S.E.2d 485, 488 (2005).

The burden of clearly establishing the absence of a genuine issue of material fact is upon the party seeking summary judgment. *McCall v. State Farm Mut. Auto. Ins. Co.*, 359 S.C. 372, 376, 597 S.E.2d 181, 183 (Ct.App.2004). Once the

---

2. After the trial court heard the Bank's motion for summary judgment, Yoffie also moved for summary judgment. The trial court stayed this motion pending our decision in this case.

party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the non-moving party's case, the non-moving party cannot simply rest on mere allegations or denials contained in the pleadings. *Ellis v. Davidson*, 358 S.C. 509, 518, 595 S.E.2d 817, 822 (Ct.App.2004). Rather, the non-moving party must come forward with specific facts showing a genuine issue for trial. *Peterson v. W. Am. Ins. Co.*, 336 S.C. 89, 94, 518 S.E.2d 608, 610 (Ct.App.1999).

## LAW/ANALYSIS

The Receiver contends the trial court erred in holding the doctrine of *in pari delicto* barred all of her claims. We disagree.

 The doctrine of *in pari delicto* is "[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Black's Law Dictionary* 794 (7th ed. 1999). In South Carolina, this doctrine precludes one joint tort-feasor from seeking indemnity from another. *See Rock Hill Tel. Co. v. Globe Commc'ns, Inc.*, 363 S.C. 385, 389 n. 2, 611 S.E.2d 235, 237 n. 2 (2005) ("In general, there is no right to indemnity between joint tortfeasors."); *Atlantic Coast Line R. Co. v. Whetstone*, 243 S.C. 61, 68, 132 S.E.2d 172, 176 (1963) (holding that there generally is no right to indemnity between joint tortfeasors). However, the "adverse interest" exception applies where the actions of one wrong-doer, usually an agent, are clearly adverse to the other party's interests. *See Little v. S. Cotton Oil Co.*, 156 S.C. 480, 483–84, 153 S.E. 462, 463 (1930) ("The general rule is that when an agent is engaged in a transaction in which he is interested adversely to his principal, the principal will not be charged with knowledge of the agent acquired therein."). Under this exception, the wrongs of the agent would not be imputed to the principal and *in pari delicto* would not apply.

 No case in South Carolina directly addresses the issue of whether a party can assert the defense of *in pari delicto* against the receiver of a corporation that engaged in past wrongdoing. However, we think the decisions of the Seventh Circuit Court of Appeals in *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir.1995), and *Knauer v. Jonathon Roberts Financial*

*Group, Inc.,* 348 F.3d 230 (7th Cir.2003), should inform our decision in this case.

In *Scholes,* Michael Douglas created three corporations that he used to perpetuate Ponzi schemes. The SEC filed a complaint against Douglas and the corporations, and the federal court appointed a receiver for the corporations. The receiver brought suit against the transferees of the money collected from the Ponzi scheme, asserting a cause of action for fraudulent conveyance. The Seventh Circuit Court of Appeals held the receiver had standing to sue these transferees because "the defense of *in pari delicto* loses its sting when the person who is in *in pari delicto* is eliminated." *Scholes,* 56 F.3d at 754.

The *Scholes* court relied on two important factors in reaching its decision. First, it applied the adverse interest exception to the general rule that the knowledge of corporate agents is imputed to the corporation. *Id.* at 754. Additionally, the Seventh Circuit noted the receiver in *Scholes* sued the beneficiaries of the fraudulent conveyances. *See id.* at 755 ("Now that the corporations created and initially controlled by Douglas are controlled by a receiver whose only object is to maximize the value of the corporations for the benefit of their investors and any creditors, we cannot see an objection to the receiver's bringing suit *to recover corporate assets* . . . .") (emphasis added).

In *Knauer,* a receiver was appointed for two entities operating a Ponzi scheme. The entities were created for the purpose of collecting money from investors, but the officers and directors failed to invest the funds and allocated money to their own personal use. The receiver brought causes of action sounding in tort against several brokers that helped sell securities from these entities. The district court dismissed the receiver's claims, noting the receiver's complaint acknowledged the participation of the entities in the Ponzi schemes and, therefore, the entities were barred from suing the bank under the doctrine of *in pari delicto*. *Knauer,* 348 F.3d at 232–33.

In affirming the district court's decision, the Seventh Circuit Court of Appeals held "[i]f the case before us involved the voiding of a fraudulent conveyance . . . we would likely apply

*Scholes* ....*" Knauer,* 348 F.3d at 236. Furthermore, it noted "[t]he key difference, for purposes of equity, between fraudulent conveyance cases such as *Scholes* and the instant case is the identities of the defendants." *Id.* "The receiver here is not seeking to recover the diverted funds from the beneficiaries of the diversions ... Rather, this claim is a claim for tort damages from entities that derived no benefit from the embezzlements, but that were allegedly partly to blame for their occurrence." *Id.*

■ Similarly, the Receiver in the present case was seeking tort damages from the Bank for its actions regarding the accounts. The Receiver was not seeking to recover diverted funds from the Bank. Thus, relying on the *Knauer* decision, we hold that, in the absence of a fraudulent conveyance case, the receiver of a corporation used to perpetuate fraud may not seek recovery against an alleged third-party co-conspirator in the fraud. In this case, the Receiver does not dispute the fact that Dunlap, the president of both Elfindepan and SAF, used these corporations to perpetrate a fraud on investors. The apparent sole purpose for the existence of these corporations was to perpetuate the investment scheme. Moreover, the Bank handled the accounts exactly as it was bound to do pursuant to the account agreements. Thus, Receiver did not make any claim against the Bank for fraudulent conveyance. Therefore, the trial court properly applied the doctrine of *in pari delicto* in granting the Bank's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the trial court's decision is **AFFIRMED.**[3]

HUFF, and STILWELL, JJ., concur.

---

3. Because we find the trial court correctly granted summary judgment based on *in pari delicto*, we need not address the remaining alternative sustaining grounds. *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) (holding the decision to address any additional sustaining grounds is within the appellate court's discretion).