750 S.E.2d 93

**Lauren PROCTOR and Trans–Union National Title Insurance Company f/k/a Atlantic Title Insurance Company, Respondents,**

**v.**

**WHITLARK & WHITLARK, INC. d/b/a Rockaways Athletic Club and Pizza Man, Forrest Whitlark, Paul Whitlark, Charlie E. Bishop, and Brett Blanks, Appellants.**

Appellate Case No. 2012–205510.

No. 5131.

Court of Appeals of South Carolina.

Heard March 7, 2013.
Decided May 15, 2013.
Rehearing Denied Oct. 22, 2013.

Ariail Elizabeth King and James Mixon Griffin, both of Lewis Babcock & Griffin, LLP, of Columbia, for appellants.

Louis H. Lang, of Callison Tighe & Robinson, LLC, of Columbia, and Mario Anthony Pacella, of Strom Law Firm, LLC, of Columbia, for respondents.

WILLIAMS, J.

Whitlark & Whitlark, Inc. d/b/a Rockaways Athletic Club and Pizza Man, Forrest Whitlark, Paul Whitlark, Charlie E. Bishop, and Brett Blanks (collectively, Appellants) appeal the circuit court's order granting Lauren Proctor's motion for summary judgment,[1] arguing the circuit court erred in finding that the South Carolina legislature has abrogated the doctrine

---

1. To the extent Appellants appeal the circuit court's denial of their motion for summary judgment, we decline to address this issue because orders denying summary judgment are not appealable. *See Olson v. Faculty House of Carolina, Inc.*, 354 S.C. 161, 168, 580 S.E.2d 440, 444 (2003) ("[T]he denial of a motion for summary judgment is not appealable, even after final judgment.").

of *in pari delicto* with regard to losses sustained by illegal gambling. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In 1995, Proctor began gambling on video gaming machines located in restaurants and bars in Columbia, South Carolina. From 1999 until 2005, Proctor frequently gambled on video poker machines located in the Pizza Man and Rockaways Athletic Club (Rockaways) restaurants.[2] During that time, Proctor lost between $1,000 and $5,000 per week from gambling on video poker machines at the two restaurants. According to Proctor, Pizza Man and Rockaways would provide her cash advances on her credit cards to enable her to fund her gambling as well as free food and alcohol.

Proctor was employed by State Title, which her mother owned. State Title provided real estate closing services to attorney Walter Smith. Proctor began forging her mother's name on checks and stealing money from Smith's trust account to use video poker machines. Because of Proctor's activities, Smith's trust account contained insufficient funds to satisfy the mortgages on several properties at closing. Accordingly, Trans–Union National Title Insurance Company[3] (Trans–Union), which acted as State Title's title insurance company, paid approximately $550,000 in claims arising from the shortages in Smith's trust account.

In July 2000, the operation of video poker machines became illegal in South Carolina. Proctor admitted she was aware her use of the video poker machines was illegal. Pizza Man and Rockaways continued to operate video poker machines in their establishments until a Federal Bureau of Investigation sting operation in 2005.

On September 10, 2007, Proctor entered into a plea agreement with federal prosecutors and pled guilty to mail fraud under 18 U.S.C. § 1341. In addition, Proctor agreed to pay

---

**2.** Appellants Forrest Whitlark and Paul Whitlark are part owners of Whitlark & Whitlark, Inc. d/b/a Pizza Man and Rockaways (collectively, Whitlarks). Appellants Charlie E. Bishop and Brett Blanks co-owned Zodiac Distributing, LLC, which owned one of the video poker machines in Pizza Man.

**3.** At the time, Trans–Union was named Atlantic Title Insurance Company.

restitution in the amount of $565,475.25 to Trans–Union and $195,000 to Smith.

Proctor and Trans–Union brought the instant action against Appellants to recover the losses they incurred as the result of Proctor's gambling. Specifically, Proctor and Trans–Union asserted claims for unjust enrichment, violations of the South Carolina Unfair Trade Practices Act (SCUTPA), and civil conspiracy. Appellants filed a motion for summary judgment, arguing the doctrine of *in pari delicto* barred Proctor's claims and challenging Trans–Union's standing. In addition, Proctor moved for partial summary judgment against the Whitlarks on the issue of liability. The circuit court found Trans–Union lacked standing to bring the action and granted Appellants' motion for summary judgment on Proctor's unjust enrichment claim based on their unclean hands defense. However, the circuit court found that the doctrine of *in pari delicto* has been abrogated in South Carolina with regard to gambling losses. Accordingly, the circuit court granted Proctor's motion for partial summary judgment on the issue of liability against the Whitlarks and denied Appellants' motion for summary judgment based on the *in pari delicto* defense. This appeal followed.

## LAW/ANALYSIS

Appellants argue the circuit court erred in granting Proctor's partial motion for summary judgment. Specifically, Appellants contend the circuit court erred in finding that the doctrine of *in pari delicto* has been abrogated in South Carolina with regard to losses sustained in illegal gambling. We disagree.

"The common-law defense at issue in this case derives from the Latin, *in pari delicto potior est conditio defendentis:* 'In a case of equal or mutual fault ... the position of the [defending] party ... is the better one.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985) (alterations in original); *see also Myatt v. RHBT Fin. Corp.*, 370 S.C. 391, 395, 635 S.E.2d 545, 547 (Ct.App.2006) ("The doctrine of *in pari delicto* is the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." (internal quotation marks and alterations omitted)). South Carolina

courts have previously applied the *in pari delicto* doctrine in certain cases involving illegal gambling. *See, e.g., Rice v. Gist,* 32 S.C.L. (1 Strob.) 82, 85 (1846) ("[A]ll wagers are unlawful, and not to be recovered in courts of justice." (internal quotation marks omitted)). However, section 32–1–10 of the South Carolina Code (2007), which was originally adopted in 1712 as a part of the Statutes of Anne, explicitly allows the recovery of gambling losses in excess of fifty dollars. Specifically, section 32–1–10 provides as follows:

> Any person who shall at any time or sitting, by playing at cards, dice table or any other game whatsoever or by betting on the sides or hands of such as do play at any of the games aforesaid, lose to any person or persons ... in the whole, the sum or value of fifty dollars and shall pay or deliver such sum or value or any part thereof shall be at liberty, within three months ... to sue for and recover the money ... from the respective winner or winners thereof, with costs of suit, by action to be prosecuted in any court of competent jurisdiction.

Similarly, if a person who lost money gambling does not bring suit pursuant to section 32–1–10 within three months of the gambling loss, section 32–1–20 allows any person to bring suit against the winner for treble damages within one year of the date of the loss. *See* S.C.Code Ann. § 32–1–20 (2007) ("In case any person who shall lose such money ... shall not, within the time aforesaid, ... sue and with effect prosecute for the money or other things so by him or them lost and paid and delivered as aforesaid, it shall be lawful for any other person ... to sue for and recover the same and treble the value thereof, with costs of suit, against such winner or winners as aforesaid. . . .").

This court and our supreme court have recognized in more recent cases that sections 32–1–10 and –20 "promote a policy which prevents a gambler from allowing his vice to overcome his ability to pay" and "protect a citizen and his family from the gambler's uncontrollable impulses." *Johnson v. Collins Entm't Co.,* 349 S.C. 613, 635, 564 S.E.2d 653, 664–65 (2002) (internal quotation marks omitted); *see also McCurry v. Keith,* 325 S.C. 441, 444, 481 S.E.2d 166, 168 (Ct.App.1997) ("The purpose of [section 32–1–10] is to punish excessive gaming and to prevent a gambler from allowing his vice to

overcome his ability to pay."). In *Johnson*, the plaintiffs, a group of habitual gamblers, brought suit to recover losses they sustained on video poker machines owned or operated by the defendants. 349 S.C. at 621 & n. 1, 564 S.E.2d at 657 & n. 1. Specifically, the plaintiffs asserted causes of action under the Racketeer Influenced Corrupt Organizations Act, SCUTPA, and sections 32–1–10 and –20 of the South Carolina Code. *Id.* at 621, 564 S.E.2d at 657. When the *Johnson* plaintiffs filed their suit in 1997, the operation and use of video poker machines were generally legal in South Carolina. *Id.* at 633, 564 S.E.2d at 664. However, the *Johnson* plaintiffs alleged that the defendants operated their machines in a manner that violated state law, such as offering the possibility of payouts in excess of $125. *Id.* at 621–31, 564 S.E.2d at 657–63.

In *Johnson*, the supreme court rejected the argument that section 32–1–10 provides the exclusive remedy to recover gambling losses and explicitly recognized that a plaintiff may also seek to recover gambling losses pursuant to SCUTPA. *Id.* at 634–35, 564 S.E.2d at 664–65. In addition, the court declined to apply the defendants' *in pari delicto* defense to the plaintiffs' SCUTPA claim. *Id.* at 639 n. 13, 564 S.E.2d at 639 n. 13. The court reasoned, in part, that because the operators of the video poker machines were operating in a regulated area of the law, they should "be held to a greater knowledge and understanding of the laws than their customers, particularly where the laws are designed to protect the player from his or her own bad judgment." *Id.*

Based upon the supreme court's holding in *Johnson*, we find the circuit court did not err in rejecting Appellants' *in pari delicto* defense. We acknowledge the facts of the instant case are distinguishable from those in *Johnson* because video poker gambling was illegal when Proctor suffered her losses. Nevertheless, three tenets recognized by the supreme court in *Johnson* are instructive to our analysis and lead to the same conclusion that the *in pari delicto* defense does not bar Proctor's claims. First, statutory and case law in South Carolina support the policy of allowing plaintiffs to recover gambling losses as a way of both discouraging illegal gambling and of protecting gamblers and their family members from imprudent gambling activities. *See Johnson*, 349 S.C. at 635, 564 S.E.2d at 664–65 (noting that sections 32–1–10 and –20

promote a policy of limiting excessive and/or unlawful gambling); S.C.Code Ann. §§ 32–1–10, –20. Second, the owners and operators of video poker machines are not truly *in pari delicto* with the persons who use the machines for gambling because in many cases, a habitual gambler is acting under the sway of "uncontrollable impulses" and, thus, requires protection from his or her bad judgment. *See Johnson*, 349 S.C. at 635, 564 S.E.2d at 664–65. Finally, sections 32–1–10 and –20 are not the exclusive avenues for plaintiffs to recover gambling losses and do not preclude plaintiffs from seeking recovery under other state law theories, including SCUTPA. *See Johnson*, 349 S.C. at 635, 564 S.E.2d at 665 (noting that sections 32–1–10 & and –20 do not preclude plaintiffs from recovering gambling losses under other remedies provided by law, including SCUTPA). We find these tenets espoused by the supreme court in *Johnson* support the circuit court's holding that the defense of *in pari delicto* does not bar Proctor's claims.[4]

Courts in other jurisdictions have similarly found that the *in pari delicto* defense does not bar the recovery of illegal gambling losses. For example, in *O'Neil v. Crampton*, 18 Wash.2d 579, 140 P.2d 308 (1943), the Washington Supreme Court employed a similar approach and explained the policy reasons for declining to apply the doctrine to gambling losses. The court acknowledged the general rule that "one cannot establish a right and invoke a remedy if he himself is a wrongdoer. . . ." *Id.* at 310. Nevertheless, the court found that a Washington statute providing for a civil remedy to recover money lost while engaged in gambling

> was a declaration of public policy based upon the idea that, if gambling is to be discouraged, one way in which it might be done would be to permit recovery by the loser and at the same time protect those inclined to gamble against their weakness and improvidence, notwithstanding that the loser was [*in pari delicto*] with the winner.

*Id.* The court noted that the fact that the gambler was engaged in an illegal activity should not preclude recovery

---

4. Moreover, we are not persuaded by the cases cited by Appellants in support of their claim that *in pari delicto* applies based on the factual dissimilarities and more recent pronouncements of the supreme court.

because the statute criminalizing gambling was "but another attempt to discourage gambling." *Id.* at 311. The basis of allowing the recovery of losses sustained by illegal gambling "is that not only is the individual protected, but it is also a protection to the public, which is even more important, and this would be made more effective by allowing a recovery." *Id.* at 310; *see also Major League Baseball Props., Inc. v. Price*, 105 F.Supp.2d 46, 53 (E.D.N.Y.2000) (noting that the New York legislature passed a law allowing the recovery of gambling losses because the common law rule applying the doctrine of in pari delicto to such losses "did little to help effectuate the purposes of the gambling prohibitions, which were adopted with a view toward protecting the family man of meager resources from his own imprudence at the gambling tables" (internal quotation marks omitted)); *cf. Bateman Eichler, Hill Richards, Inc.*, 472 U.S. at 306–07, 105 S.Ct. 2622 (noting that "[i]n its classic formulation, the in pari delicto defense was narrowly limited to situations where the plaintiff truly bore at least substantially equal responsibility for his injury, because in cases where both parties are [*in delicto* ], concurring in an illegal act, it does not always follow that they stand [*in pari delicto* ]; for there may be, and often are, very different degrees in their guilt" (internal quotation marks omitted)).

Based on this case and statutory law and for the reasons set forth above, we find the circuit court did not err in granting Proctor's motion for summary judgment on the issue of liability against the Whitlarks. As noted by the supreme court in *Johnson*, statutory and case law in South Carolina support a policy of allowing plaintiffs to recover gambling losses as a way of both discouraging illegal gambling and of protecting gamblers and their family members from imprudent gambling activities. 349 S.C. at 635, 564 S.E.2d at 664–65. We hold that with respect to gambling losses under the circumstances of the instant case, the doctrine of *in pari delicto* has been abrogated for reasons of public policy and does not bar the recovery of such losses. Accordingly, we affirm the circuit court's order granting Proctor's motion for summary judgment.

## CONCLUSION

Based on the foregoing, the circuit court's order granting Proctor's motion for summary judgment on the issue of liability against the Whitlarks is

**AFFIRMED.**

HUFF and KONDUROS, JJ., concur.